UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| & | ) |
| STATE OF MAINE, | ) |
| Plaintiffs, | ) |
| v. | )   Civil Case No. |
| MARTIN JOSEPH O'BRIEN, | ) |
| Defendant. | ) |

## COMPLAINT

NOW COME Plaintiffs, the United States of America (the "United States"), on behalf of its agency the U.S. Department of Health and Human Services ("HHS"), and the State of Maine ("Maine"), on behalf of its agency the Maine Department of Health and Human Services ("Maine DHHS") (together, "Plaintiffs"), and hereby file the instant Complaint pursuant to 31 U.S.C. § 3730(a) and 22 M.R.S.A. § 15, and in support thereof allege as follows:

### I. Summary of Action

1. This is a civil action against Martin Joseph O'Brien ("O'Brien") for violations of the federal False Claims Act and analogous Maine state law. From September 2017 through November 2018, Defendant knowingly submitted or caused to be submitted to MaineCare false claims for reimbursement, in that he continued to employ and pay from MaineCare reimbursements an individual who had been excluded from participation in Federal health care programs by the HHS Office of Inspector General ("HHS-OIG") at Grace Street Services, LLC ("GSS"), a MaineCare provider substance abuse treatment program.

2. Defendant employed this individual at the substance abuse treatment program, of which Defendant was the executive director and an owner, despite knowing that she had been excluded from participation in Federal health care programs, and despite knowing that she continued to be excluded from participation in such programs during the period from September 2017 through November 2018.

3. As a provider of MaineCare services, GSS was prohibited from receiving payment from this program for items or services furnished by the excluded employee—even administrative or management services—and was further barred from paying the excluded individual, directly or indirectly, from Federal health care program funds.

4. The instant action accordingly seeks treble damages and civil penalties arising from all false claims submitted by Defendant to MaineCare pursuant to the federal False Claims Act, *see* 31 U.S.C. § 3729, *et seq.*, as well as Maine law, *see* 22 M.R.S.A. § 15.

## II. Jurisdiction and Venue

5. This Court has jurisdiction over the claims brought by the United States under the federal False Claims Act pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

6. This Court further has jurisdiction over the claims brought by the State of Maine pursuant to 28 U.S.C. §§ 1332, 1367 and 31 U.S.C. § 3732(b).

7. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) both because Defendant transacted business in this District and because his acts proscribed under 31 U.S.C. § 3729 occurred in this District.

8. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b), 1391(c), because Defendant transacted business in this District and/or because a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### III.  Parties

9. Plaintiff the United States is acting on behalf of its federal agency, HHS.

10. Plaintiff the State of Maine is acting on behalf of its state agency, Maine DHHS.

11. Defendant was the executive director of GSS, a substance abuse treatment program located at 88 Oxford Street, in Lewiston, Maine.  Defendant was also an owner of GSS.  GSS was a MaineCare provider that provided mental health and substance abuse treatment services.

12. During the timeframe relevant to this action, Defendant exercised ownership of and control over GSS, oversaw its operations, and held hiring and payment authority over all employees.

### IV.  Applicable Law & Regulations

**A.   The Prohibition Against Employing Excluded Individuals**

13. With respect to Federal health care programs, including MaineCare, federal law proscribes entities which receive Federal health care funds from arranging or contracting with excluded individuals "for the provision of items or services for which payment may be made under such [] program[s]."  42 U.S.C. § 1320a-7a(a)(6).

14. Such entities, by regulation, are prohibited from using Federal health care program funds for an excluded individual's "administrative and management services or salary."  42 C.F.R. § 1001.1901(b)(1), (4).

15. MaineCare is a Federal health care program paid by Maine state funds, as well as by grants made to states by HHS, by and through its sub-agency the Centers for Medicare & Medicaid Services ("CMS").

16. The portion of MaineCare paid by federal funds is known as the Federal Financial Participation, and differs by state and by fiscal year based on each state's *per capita* income. This percentage contribution is known as the Federal Medical Assistance Percentage.

17. For the majority of the timeframe relevant here, the Federal Medical Assistance Percentage provided to the State of Maine was 64.34 percent, with the State of Maine funding the remaining 35.66 percent.

18. Maine DHHS administers the MaineCare program for the State of Maine on behalf of CMS.

19. MaineCare's regulations, policies, and guidelines require MaineCare-reimbursable services to be billed by providers using appropriate billing codes and methodologies.

20. Providers must also certify their compliance with applicable MaineCare laws and regulations as a prerequisite to receiving MaineCare funds for covered services.

21. During the timeframe at issue, as a prerequisite to reimbursement for covered services, the operative MaineCare Benefits Manual (the "Manual" or "MBM") provided additional material rules and requirements applicable to all MaineCare providers submitting claims.

22. Section 1.03 of the Manual established certain rules and requirements for providers regarding employment of individuals who have been excluded from participation in Federal health care programs.

23. Specifically, Section 1.03-8(U) of the Manual provided that

> Providers, contractors and intermediaries in public, private or voluntary agencies that have Provider agreements with the Department, are obligated to: . . . 3. Ensure that the provisions of 42 C.F.R. 1000, *et seq.*, pertaining to the exclusions of individuals and entities are abided by at all times.

*See* MBM § 1.03-8(U).

24. Additionally, Section 1.03-8(Y) of the Manual provided that enrolled providers must

> Abide by the provisions of 42 C.F.R. 1000, et seq., pertaining to the exclusions of individuals and entities from participation in Medicare or MaineCare and *ensure that excluded individuals or entities are not employed or utilized to provide services, receive payments, or submit claims, to the MaineCare Program*. Excluded provider information can be referenced at the Health and Human Services Office of Inspector General web site: http://exclusions.oig.hhs.gov and the Division of Audit, Program Integrity Unit web site: https://mainecare.maine.gov/mhpviewer.aspx?FID=MEEX

*See* MBM § 103-8(Y) (emphasis added).

25. The Manual further directs participating providers to check the exclusion databases maintained by HHS and Maine DHHS to obtain information regarding excluded providers.

26. In addition, the Maine DHHS Office of MaineCare Services Program Integrity webpage informs the public that "MaineCare providers are prohibited from employing, directly or indirectly, excluded individuals or entities. Federal regulations prohibit payment for any item or service furnished, ordered, or prescribed by an excluded individual." *See* https://www.maine.gov/dhhs/oms/providers/program-integrity (last visited September 19, 2021).

27. In addition, the May 8, 2013 Special Advisory Bulletin on the Effect of Exclusion from Participation in Federal Health Care Programs (the "2013 Special Advisory") issued by the HHS Office of the Inspector General provided that

> Excluded persons are prohibited from furnishing administrative and management services that are payable by the Federal health care programs. This prohibition applies even if the administrative and management services are not separately billable. . . . an excluded individual may not provide other types of administrative and management services, such as health information technology services and support, strategic planning, billing and accounting, staff training, and human resources, unless wholly unrelated to Federal health care programs.

The 2013 Special Advisory further provided that excluded provider liability "would apply to the furnishing of all of the categories of items or services that are violations of an OIG exclusion, including. . . administrative and management services[.]"

**B.    The Federal False Claims Act**

28.    The False Claims Act, at 31 U.S.C. § 3729(a)(1)(A), provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

29.    The False Claims Act defines the term "knowingly" under 31 U.S.C. § 3729(b)(1)(B) to mean that a person, with respect to information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."

30.    Pursuant to 31 U.S.C. § 3729(b)(1)(B), no proof of specific intent to defraud is required.

**C.    Maine Law Civil Liability of Persons Making False Claims**

31.    Maine law, 22 M.R.S.A. § 15, further provides that "[a]ny person, firm, association, partnership, corporation or other legal entity who makes or causes to be made or presents or causes to be presented for payment or approval any claim upon or against the department or upon any funds administered by the department, knowing such claim to be

6

materially false, fictitious or fraudulent, or who knowingly makes any false written statement or knowingly submits any false document material to a false, fictitious or fraudulent claim or who knowingly enters into any agreement, combination or conspiracy to defraud the department by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or who knowingly makes or causes to be made a false written statement or record material to an obligation to pay or transmit money or property to the department or knowingly conceals or knowingly and improperly materially avoids or materially decreases an obligation to pay or transmit money or property to the department is, in addition to any criminal liability that may be provided by law, subject to civil suit" and penalties.

32. The Court, pursuant to 31 U.S.C. § 3732(b), has jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730 of Title 31.

### V. Factual Background

33. GSS was a substance abuse treatment program located at 88 Oxford Street, in Lewiston, Maine.

34. In late 2010, GSS entered into a Provider Agreement with Maine DHHS to become a MaineCare provider. The provider agreement was signed by Defendant, who listed his role at GSS as "Director."

35. As Director of GSS, Defendant had authority to decide matters relating to employment at GSS, including who was hired at—and terminated from—GSS.

36. GSS was required to comply with the provisions of Federal and Maine laws and regulations related to MaineCare, as well as the provisions of the Manual.

37. In addition, Defendant certified that GSS did not employ any individuals who were excluded from Federal health program participation, and that if GSS became aware that it did employ an individual who was excluded from such participation, it would notify DHHS.

38. On June 30, 2015, HHS-OIG notified Kate S. O'Brien—Defendant's daughter—that she was being "excluded from participation in any capacity in the Medicare, Medicaid, and **all** Federal health care programs as defined in section 1128B(f) of the Social Security Act . . . for the minimum statutory period of 5 years." The action was effective July 20, 2015. The exclusion was under section 1128(a)(3) of the Social Security Act, 42 U.S.C. § 1320a-7(a)(3) and was based on Kate O'Brien's October 2014 conviction for forgery and unlawful possession of scheduled drugs. An investigation by the Maine Drug Enforcement Agency revealed that while employed at GSS, Kate O'Brien stole prescriptions pre-signed by the Medical Director at GSS, and used those prescriptions to obtain Suboxone illegally.

39. On April 17, 2015, Maine DHHS sent Ms. O'Brien a letter notifying her that she was to be "excluded from participating as a provider in MaineCare and from any and all other medical assistance programs administered by the Department," effective upon the end of her 60 day period to appeal the decision. Ms. O'Brien was excluded from MaineCare on June 18, 2015.

40. Such exclusion information was publicly available and easily accessible via websites maintained by Maine DHHS and HHS.

41. However, Ms. O'Brien continued to work for GSS at Defendant's direction. On February 1, 2016, Maine DHHS sent GSS a letter notifying it that "[t]he Division of Audit, Program Integrity, Department of Health and Human Services has recently learned that Kate O'Brien, an individual excluded from participating in Medicare, Medicaid, and all Federal health programs, is an employee of Grace Street Services, LLC. . . . Federal regulations prohibit the

MaineCare Program from reimbursing entities that employ any individual that has been excluded from participating in federally funded health care programs." Maine DHHS demanded that GSS confirm Ms. O'Brien's termination from GSS.

42. On February 5, 2016, Defendant wrote to Maine DHHS enclosing a "termination document" and confirming that Ms. O'Brien would be terminated on February 6, 2016. The enclosed termination letter, as well as the letter to Maine DHHS, was signed by Defendant.

43. In December 2016, GSS, the United States, and the State of Maine entered into a settlement agreement whereby GSS agreed to pay the United States and the State of Maine $23,715.20. The settlement related to claims by the United States and the State of Maine that "from July 20, 2015 until February 5, 2016, GSS billed and received reimbursement from Medicaid for services provided by GSS, and a portion of the Medicaid funds received for these billed services was improperly used to pay the salary and benefits of Kate O'Brien, a GSS employee who previously had been excluded from Federal health care programs" in violation of the False Claims Act and other federal laws.

44. Despite GSS having paid a substantial settlement related to claims that it unlawfully employed an excluded provider, and despite knowing that his daughter remained an excluded provider, Defendant subsequently concocted a ruse in order to employ Ms. O'Brien again at GSS.

45. 88 Oxford, LLC ("88 Oxford") was a company formed in 2015 and owned in part by Defendant and his wife. Defendant hired his daughter—who was at the time still an excluded provider—as an employee at 88 Oxford. 88 Oxford was not a MaineCare provider.

46. Defendant used 88 Oxford as a "pass through" company in order to pay Ms. O'Brien for the services she continued to perform at GSS. Instead of GSS paying Ms. O'Brien

9

directly for her services, GSS would pay 88 Oxford for her services, and 88 Oxford would pay Ms. O'Brien.

47. Defendant utilized 88 Oxford for a pass through for the services Ms. O'Brien performed for GSS from at least September 2017 through November 2018.

48. During this period, Defendant knew that Ms. O'Brien was performing services for GSS, and he knew that Ms. O'Brien was prohibited from working at GSS due to her status as an excluded provider.

49. Ms. O'Brien was paid $9,250.00 through 88 Oxford between December 2017 and November 2018 for work she performed at GSS between September 2017 and November 2018.

50. During that same period, GSS submitted claims to MaineCare, and received payments from MaineCare for those services. Upon information and belief, a portion of those payments was used to pay the excluded provider's salary and benefits.

51. State and Federal health care programs may not pay, directly or indirectly, for items or services furnished, ordered, or prescribed by excluded individuals or entities, including administrative and management services or salary.

52. By failing to abide by the legal requirements of the Medicare and MaineCare programs regarding the employment of excluded individuals, and by failing to determine whether Ms. O'Brien was an excluded individual, Defendant acted with deliberate ignorance or reckless disregard of the falsity of the claims GSS submitted to Federal health care programs.

53. Defendant accordingly defrauded Federal health care programs by seeking and receiving funds for GSS when it was prohibited from doing so due to Defendant's hiring and continued employment of an excluded individual, and thereafter using some or all of such funds

to pay the excluded individual's salary and benefits between September 2017 and November 2018.

### Count I: Presenting False or Fraudulent Claims

(United States; 31 U.S.C. §§ 3729(a)(1)(A), 3730(a))

54. Paragraphs 1 through 53 are realleged as though fully set forth herein.

55. Defendant, as director and an owner of GSS, by and through GSS's requests for payment or causing requests for payment where Medicare and MaineCare prohibited payments to providers for items or services furnished by excluded individuals, and required as a condition of payment certification of compliance with applicable laws and regulations, knowingly submitted or caused to be submitted false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and thereafter received payments on such false or fraudulent claims.

56. Because of Defendant's acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties for each violation.

### Count II: Maine Law Civil Liability of Persons Making False Claims

(Maine; 22 M.R.S.A. § 15)

57. Paragraphs 1 through 56 are realleged as though fully set forth herein.

58. Defendant, as director and an owner of GSS, made or caused to be made or presented or caused to be presented for payment or approval claims upon or against Maine DHHS or upon funds administered by Maine DHHS, knowing such claims to be materially false, fictitious or fraudulent, or knowingly made false written statements or knowingly submitted false documents material to false, fictitious or fraudulent claims or knowingly entered into an

agreement, combination or conspiracy to defraud Maine DHHS by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or knowingly made or caused to be made false written statements or records material to an obligation to pay or transmit money or property to Maine DHHS or knowingly concealed or knowingly and improperly materially avoided or materially decreased an obligation to pay or transmit money or property to Maine DHHS, in violation of 22 M.R.S.A. § 15.

59. Because of Defendant's acts, Maine sustained damages in an amount to be determined at trial, and therefore is entitled to threefold damages under 22 M.R.S.A. § 15, plus civil penalties of not less than $2,000 for each violation.

## Count III: Unjust Enrichment

(Common Law; 31 U.S.C. § 3732(b))

60. Paragraphs 1 through 59 are realleged as though fully set forth herein.

61. Defendant was unjustly enriched through his conduct as detailed herein.

62. The circumstances of the matter are such that, in equity, Defendant is liable to account for and pay such amounts, which are to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the United States and Maine request that judgment be entered in their favor and against Defendants as follows:

A. On Counts I (Violations of 31 U.S.C. § 3729(a)(1)(A) and (B)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

B. On Count II (Violations of 22 M.R.S.A. § 15), for threefold Maine's damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

C. On Counts I and II for an award of fees and costs pursuant to 31 U.S.C. § 3729 and 22 M.R.S.A. § 15;

D. On Count III (Unjust Enrichment), for an accounting and for the amounts by which Defendant was unjustly enriched, in an amount to be determined at trial, together with costs and interest; and

E. All other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The United States and Maine demand a jury trial in this case pursuant to Federal Rule of Civil Procedure 38(b) of all claims and issues so triable.

Dated: January 31, 2023  Respectfully submitted,
Portland, Maine

DARCIE N. MCELWEE
U.S. Attorney for the District of Maine

BY: /s/ James D. Concannon
JAMES D. CONCANNON
Counsel for the United States of America
Assistant U.S. Attorney
100 Middle Street
East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
James.Concannon@usdoj.gov
*On behalf of the United States*

DATED: January 31, 2023

AARON M. FREY
Attorney General for the State of Maine

BY: /s/ William R. Savage
WILLIAM R. SAVAGE
Assistant Attorney General
Director, Healthcare Crimes Unit
6 State House Station
Augusta, ME 04333
(207) 626-8804
William.Savage@maine.gov
*On behalf of the State of Maine*